IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

Agropur MSI, LLC,                                    Court File No. 15-cv-96

       Plaintiff,

v.                                                   **COMPLAINT**

Sterling Technology, Inc.,

       Defendant.

---

Agropur MSI, LLC ("Agropur"), by and through its attorneys, brings this Complaint against Defendant Sterling Technology, Inc. ("Sterling") as follows:

### INTRODUCTION

1.    This action arises from Sterling selling Agropur dangerously adulterated product. Agropur ordered gluten-free colostrum from Sterling. Sterling delivered the colostrum and Agropur paid for it, only to determine that the colostrum breached the warranties provided by Sterling because it contained unacceptable levels of gluten.

### PARTIES

2.    Plaintiff Agropur MSI, LLC ("Agropur") is a limited liability company with its principal place of business in La Crosse, Wisconsin.

3.    Defendant Sterling Technology, Inc. ("Sterling") is a corporation with its principal place of business in Brookings, South Dakota.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1332(a) in that the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2).

6.      Venue is also proper pursuant to the terms of the purchase order that forms the contract that is the subject of the Complaint.  Specifically, Agropur's purchase order was made subject to the terms and conditions stated in the "Vendor Agreement," which provided, in part:

> A.      *Seller hereby irrevocably submits to the nonexclusive jurisdiction of La Crosse County Circuit Court located in La Crosse, Wisconsin or the U.S. District Court for the Western District of Wisconsin located in Madison, Wisconsin for the adjudication of any matter arising out of or relating to this Agreement.  Seller hereby waives any objection to any action or proceeding in the aforementioned courts on the grounds of improper venue or any claim that said courts are inconvenient forums.*
>
> B.      *This Agreement shall be construed and interpreted according to the laws of the State of Wisconsin without reference to principles of conflict of laws.*

A true and correct copy of the purchase order between Agropur and Sterling ("Purchase Order"), which includes the Vendor Agreement, is attached hereto as Exhibit A.

## FACTS

### *GENERALLY*

7.      Agropur is in the business of processing and blending food ingredients. Agropur offers a wide variety of products and services, including functional ingredients, ingredient distribution, and contract manufacturing.

8.      Sterling is a merchant that manufactures and sells colostrum-based products.

9.      Colostrum is a form of milk produced by mammals in late pregnancy. Colostrum contains antibodies to protect newborns against disease and is lower in fat and higher in protein that ordinary milk.

10.     Gluten is a protein composite found in wheat and related grains.  Gluten gives elasticity to dough, which helps it rise and keep its shape, and often gives the final product a chewy texture.  Some people, particularly those with celiac disease, have sensitivities to gluten, such that their consumption of certain levels of gluten can cause serious health problems.

11.     Some food companies, including Agropur, market "gluten-free" products. Such products are often not entirely "free" of gluten.  The U.S. Food and Drug Administration considers a product containing less than 20 parts per million (ppm) of gluten to be appropriately labeled as "gluten free."

12.     As part of the pre-sale approval process, Sterling provided Agropur with a document entitled "Intolerance and Allergens Information" for "Colostrum Powder" (the "Allergens Info Sheet"). The Allergens Info Sheet warranted that Sterling's Colostrum

15% powder did not contain gluten.  A true and correct copy of the Allergens Info Sheet is attached hereto as Exhibit B.

13.     On January 29, 2014, Agropur placed an order for 1,543.22 lbs. of Colostrum 15% powder with Sterling.  The Purchase Order for the Colostrum 15% powder is attached hereto as Exhibit A.

14.     The Purchase Order provided "[t]his Purchase Order is made subject to the terms and conditions as stated in the Vendor Agreement."  Agropur's Vendor Agreement ("Vendor Agreement") was provided to Sterling as page 2 of the Purchase Order.  (*See* Exhibit A, p. 2.)

15.     Among other provisions, the Vendor Agreement provided:

> 5.     *SELLER'S REPRESENTATIONS AND WARRANTIES*
>
> *         *         *
>
> D.     *All Product is warranted to conform to the specifications set forth in the purchase order and to be of good and merchantable quality and free from defect.  This warranty continues after inspection, testing, acceptance, and/or payment by Buyer.*
>
> *         *         *
>
> 12.    *REMEDIES*
>
> A.     *In addition to all other remedies available under applicable law, in the event of a breach by Seller of its obligations under this Agreement, Buyer shall be entitled to recover all compensatory, consequential, incidental, special, and other damages.*

(*See* Exhibit A.)

16.     Agropur intended to use Colostrum 15% powder for blending in "gluten-free" products.  Sterling understood that Agropur intended to use the product to blend in

gluten-free products because Agropur had requested certification that the Colostrum 15% powder be gluten-free.

17. On February 18, 2014, Agropur received the Colostrum 15% powder from Sterling (the "Colostrum Powder"). A true and correct copy of the Receiving Report for the Colostrum Powder is attached hereto as Exhibit C.

18. Agropur paid Sterling $24,283.19 for the Colostrum Powder.

19. Agropur blended the Colostrum Powder into an Agropur customer's proprietary formula. Some of that formula was placed in privately labeled canisters, while the rest was kept in bulk. Agropur shipped all of the formula in canisters to said customer. Agropur anticipated packaging the remaining bulk material into canisters; however, before Agropur packaged the product, the customer informed Agropur of the unacceptable gluten levels in all the product that had been shipped. Agropur's loss includes the cost of all the other materials that were used in blending this product and the lost sales to this customer.

20. Agropur received a complaint from a customer that the "gluten free" formula it received from Agropur that had been mixed with the Colostrum Powder contained high levels of gluten.

21. The customer tested multiple samples of the formula it received from Agropur that had been mixed with the Colostrum Powder. The tests indicated levels of gluten exceeding the standard for being "gluten free."

22. Agropur informed Sterling on April 18, 2014, that the Colostrum Powder contained gluten. Agropur provided the notice in a phone call involving Shawn Wegner

(Agropur Vice-President of Quality and Engineering), Carla Fabian (Agropur Sales Manager), and Clay Scofield (Sterling Quality Assurance Manager).

23.     Agropur retained Neogen Corporation, an independent testing company, to test the Colostrum Powder and the bulk formula that was blended with the Colostrum Powder.  The Colostrum Powder tested at 1320 PPM and 2100 PPM, 30 to 50 times the acceptable limit of 20 PPM.  Even the formula that was diluted by blending tested between 64 and 70 PPM.  A true and correct copy of the test results is attached as Exhibit D.[1]

24.     In an April 9, 2014 e-mail to Agropur personnel, Sterling's Clay Scofield admitted that Lot 0260214, which is the Colostrum Powder at issue, contained "a detectable level of gluten in the composite bag.  I would estimate the level to be around 20 ppm."  A true and correct copy of this e-mail is attached hereto as Exhibit E.

25.     Sterling hired a third-party laboratory, Midwest Laboratories Inc. ("Midwest"), to test Lot 0260214 for gluten.  Midwest's testing, which Clay Scofield, the Quality Assurance Manager for Sterling, provided to Agropur, established gluten contamination in Lot 0260214 at a level of at least twice the acceptable gluten level.  A true and correct copy of Midwest's Report of Analysis is attached hereto as Exhibit F.

26.     All of the formula that Agropur sold to customers that had been mixed with the Colostrum Powder as an ingredient was recalled.  Agropur continues to retain the product.

---

[1] The test reports in terms of R5 gliadin which is ½ of gluten.  Gluten results are determined by multiplying the gliadin level times 2.

27.     Agropur notified Sterling that a partial calculation of its damages totaled $273,599.63, and that Agropur continued to accrue damages.

28.     To date, Sterling has not compensated Agropur for any of its losses.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

29.     Agropur repeats and realleges each and every allegation of paragraphs 1 through 28 above, and incorporates them by reference as though fully set forth herein.

30.     The purchase order and confirmations between Agropur and Sterling for Colostrum 15% powder created a valid contract.

31.     Sterling materially breached the contract by shipping Colostrum 15% powder that contained levels of gluten 20 ppm or higher.

32.     Agropur has been directly and proximately damaged in excess of $75,000 by Sterling's breach.

### COUNT II
### (Breach of Express Warranty – Purchase Order)

33.     Agropur repeats and realleges each and every allegation of paragraphs 1 through 32 above, and incorporates them by reference as though fully set forth herein.

34.     The Purchase Order for Colostrum 15% powder incorporated Agropur's Vendor Agreement, which provides in part:

> *All Product is warranted to conform to the specifications set forth in the purchase order and to be of good and merchantable quality and free from defect.  This warranty continues after inspection, testing, acceptance, and/or payment by Buyer.*

- 7 -

(*See* Exhibit A.)

35.     Sterling expressly represented that its Colostrum 15% powder was gluten-free in the Allergens Info Sheet (*see* Exhibit B) in its pre-sale representations to Agropur.

36.     The Colostrum Powder that Sterling sold Agropur had levels of gluten 20 ppm or higher.

37.     The failure of Sterling to provide Agropur with gluten-free Colostrum 15% powder constitutes a breach of its express warranty.

38.     As a result of Sterling's s breach of its express warranty, Agropur has been damaged in an amount in excess of $75,000.

**COUNT III**
**(Breach of Express Warranty by Affirmation, Promise, Description, Sample –**
**Wis. Stat. Ann. § 402.313)**

39.     Agropur repeats and realleges each and every allegation of paragraphs 1 through 38 above, and incorporates them by reference as though fully set forth herein.

40.     Sterling expressly warranted that its Colostrum 15% powder was gluten free in the Allergens Info Sheet (Exhibit B) that Sterling provided to Agropur.

41.     The Colostrum Powder that Sterling sold Agropur had levels of gluten 20 ppm or higher.

42.     The failure of Sterling to provide Agropur with gluten-free Colostrum 15% powder constitutes a breach of its express warranty.

43.     As a result of Sterling's s breach of its express warranty, Agropur has been damaged in an amount in excess of $75,000.

## COUNT IV
### (Breach of Implied Warranty of Merchantability – Wis. Stat. Ann. § 402.314)

44.     Agropur repeats and realleges each and every allegation of paragraphs 1 through 43 above, and incorporates them by reference as though fully set forth herein.

45.     Sterling is a merchant that regularly engages in the manufacture and sale of colostrum-based products.

46.     On the Allergens Info Sheet, Sterling warranted that its Colostrum 15% powder was gluten-free, and would therefore be suitable for use as a gluten-free ingredient in Agropur products.

47.     The purchase order and confirmations between Agropur and Sterling for Colostrum 15% powder created a valid contract.

48.     Sterling provided Agropur with the Colostrum Powder.

49.     The Colostrum Powder contained levels of gluten 20 ppm or above.

50.     The Colostrum Powder was not of fair average quality within the product's description because it was not gluten-free.

51.     The Colostrum Powder was not fit for the ordinary purposes for which the product is used.

52.     The Colostrum Powder did not conform to the promises or affirmations of fact made on the container or label for the product.

53.     The existence of these latent defects constitutes a breach of implied warranty of merchantability.

54. As a result of Sterling's breach of implied warranty of merchantability, Agropur has been damaged in an amount in excess of $75,000.

**COUNT V**
**(Breach of Implied Warranty of Fitness for**
**Particular Purpose – Wis. Stat. Ann. § 402.315)**

55. Agropur repeats and realleges each and every allegation of paragraphs 1 through 54 above, and incorporates them by reference as though fully set forth herein.

56. The purchase order and confirmations between Agropur and Sterling for Colostrum 15% powder created a valid contract.

57. At the time the order for Colostrum 15% powder was placed, Sterling had reason to know the particular purpose for which Agropur was purchasing Colostrum 15% powder.

58. Sterling knew that Agropur was relying on Sterling's skill and judgment to furnish gluten-free Colostrum 15% powder.

59. Agropur purchased Colostrum 15% powder from Sterling based on the representations of Sterling that the product was gluten-free.

60. In failing to provide gluten-free Colostrum 15% powder, Sterling breached the implied warranty of fitness for particular purpose.

61. As a result of Sterling's breach of implied warranty of fitness for particular purpose, Agropur has been damaged in an amount in excess of $75,000.

**DEMAND FOR JURY TRIAL**

Agropur hereby demands a jury trial of all issues so triable.

## DEMAND FOR RELIEF

1.     A judgment that Sterling is liable to Agropur for damages in an amount to be determined at trial.

2.     A judgment and order directing Sterling to pay the costs of this action (including all disbursements), reasonable attorney fees, and interest; and

3.     An award to Agropur for such other and further relief as is just and proper.

Dated:  February 12, 2015

/s Patrick D. Whiting
Patrick D. Whiting (#1082448)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000

pwhiting@fredlaw.com

***Attorneys for Plaintiff***

52332977_2.docx