IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AGROPUR MSI, LLC,

Plaintiff,

v.

STERLING TECHNOLOGY, INC.,

Defendant.

OPINION AND ORDER

15-cv-96-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Agropur MSI, LLC has filed a five-count complaint against defendant Sterling Technology, Inc. setting forth claims for breach of contract and breach of various express and implied warranties. Plaintiff contends that defendant sold plaintiff colostrum (a type of protein powder) that contained an excessive amount of gluten. Defendant answered by filing counterclaims alleging that in a separate transaction, plaintiff sold defendant colostrum powder that contained debris, metal shavings and "warehouse beetles" (a type of insect). Now plaintiff has filed a motion for summary judgment in which it requests: (1) judgment in its favor on liability issues related to its breach of contract and breach of warranty claims; and (2) judgment in its favor on all of defendant's counterclaims. Plaintiff has also filed a motion requesting that I sanction defendant for failing either to preserve a sample of the allegedly contaminated colostrum powder or allow defendant to inspect. After reviewing the parties' briefs, I am granting plaintiff's motion for summary judgment and denying plaintiff's motion for sanctions.

Defendant concedes that plaintiff is entitled to summary judgment as to liability on plaintiff's affirmative claims, Plf.'s PFOF ¶ 33, dkt. #27; it does not oppose plaintiff's motion for summary judgment on defendant's counterclaim for breach of express warranty; and it has expressly agreed to withdraw its counterclaim for breach of implied warranty. Thus, the only claim that remains in dispute is defendant's counterclaim for breach of contract (count I of defendant's counterclaims). I conclude that this claim is barred by the one-year contractual limitations period set forth in plaintiff's December 19, 2013 "Order Confirmation." This decision renders plaintiff's spoliation motion moot to the extent that plaintiff seeks the dismissal of defendant's counterclaims; if plaintiff believes that it is entitled to a fee award based on defendant's alleged spoliation of the contaminated colostrum, it may raise this issue after trial.

From the parties' summary judgment materials and the record, I find that the following facts are material and not subject to genuine dispute.

## UNDISPUTED FACTS

Plaintiff Agropur and defendant Sterling are both in the business of selling food products and services. Plaintiff Agropur sells a variety of ingredients and also provides custom food "manufacturing" services, such as agglomeration services. (Agglomeration is a process in which the physical properties of food products are altered so that they are denser, flow better, are more stable or more readily dispersed.) Defendant Sterling's business focuses primarily on the sale of colostrum, which is an antibiotic-rich milk product produced

by mammals in late pregnancy.

Two separate transactions are at issue in this case. In the first transaction, which gave rise to plaintiff's claims and the filing of this suit, plaintiff contracted with defendant for defendant to provide approximately 1,500 pounds of "gluten-free" colostrum powder. Defendant shipped the 1,500 pounds of colostrum powder to plaintiff on February 18, 2014. Plaintiff then mixed the colostrum powder with a customer's proprietary formula and shipped the mixture to its customer. The customer tested the product and determined that it was not "gluten-free" because the gluten content of the colostrum powder exceeded 20 parts per million. Plaintiff informed defendant of the excessive gluten levels on April 7, 2014 and eventually filed suit on February 13, 2015.

In the second transaction, which gives rise to defendant's counterclaims, defendant contracted with plaintiff for plaintiff to "agglomerate" approximately 12,700 pounds of its colostrum. Defendant submitted the purchase order number for the agglomeration of its colostrum on December 19, 2013. That same day, plaintiff responded to defendant's purchase order by sending defendant an "Order Confirmation." The Order Confirmation set forth the quantity, price and delivery terms and noted that the order was "subject to Agropur MSI, LLC, terms and con[ditions]." Plaintiff's standard terms and conditions appended to the Order Confirmation included the following contractual limitations period governing the time for filing claims: "Any action for breach of this contract or any warranty given in connection herewith must be commenced within one (1) year after the cause of action has accrued." Defendant did not object to this or any other term or condition set

forth in the December 19, 2013 Order Confirmation.

At some time between December 19, 2013 and January 24, 2014, plaintiff agglomerated the 12,700 pounds of colostrum as agreed to by the parties. Defendant arranged for the agglomerated colostrum to be picked up from plaintiff's facility on January 24, 2014 and the colostrum was delivered to defendant's facility in Brookings, South Dakota on January 27, 2014. When the product arrived at defendant's Brookings facility, one of defendant's employees performed a preliminary inspection of the colostrum and did not notice anything unusual about the shipment. However, nearly six weeks later, on March 12, 2014, defendant opened the shipment and found "debris inside the pallets, including metal shavings, dirt, and bugs (both dead and alive)."

Defendant notified plaintiff about the apparent contamination. Plaintiff investigated the problem and requested photographs, which defendant sent. On May 22, 2014, plaintiff requested samples of the contaminated colostrum, samples of the insects and an opportunity to inspect the colostrum packaging. Defendant refused to allow plaintiff to inspect the colostrum or the packaging on the ground that the colostrum had been fumigated on May 2, 2014. Defendant intended to sell the agglomerated colostrum for human consumption, but in light of the fact that it was contaminated and had been fumigated, defendant decided it could only use it as animal feed.

## OPINION

Plaintiff argues that defendant's breach of contract counterclaim fails as a matter of

law for a number of reasons. I need not consider each of these arguments, however, because I conclude that defendant's breach of contract claim is time-barred by the contractual limitations period set forth in plaintiff's December 19, 2013 Order Confirmation.

As an initial matter, although some material in the record suggests that defendant's representatives question the binding effect of the terms of the Order Confirmation, including the one-year limitations period, defendant does not raise this issue in its brief. Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) (arguments not raised in summary judgment brief are waived). Defendant also does not deny that under Wisconsin law, a contractual limitations period is enforceable even if it is shorter than the state statute of limitations. State Department of Public Welfare v. LeMere, 19 Wis. 2d 412, 419, 120 N.W.2d 695, 699 (1963) ("Public policy in this state permits parties to bind themselves by contract to a shorter period of limitations than that provided for by statute."). Accordingly, the question before the court is whether defendant's breach of contract counterclaim was timely and commenced within one year of its accrual. Resolving this issue requires construction of the parties' limitations period and ascertaining when defendant's claim "accrued" and when defendant's action was "commenced." Plf.'s PFOF ¶ 33, dkt. #27 ("Any action for breach of this contract or any warranty given in connection herewith must be commenced within one (1) year after the cause of action has accrued.").

## A. Defendant's Counterclaims are Untimely

Plaintiff contends that defendant's claim accrued on January 24, 2014 (the date

plaintiff delivered the contaminated colostrum) and the action was commenced on March 31, 2015 (the date defendant asserted its counterclaims); defendant contends its claim accrued on March 12, 2014 (the date it discovered the colostrum was contaminated) and the action was commenced on February 13, 2015 (the date plaintiff filed this lawsuit). After reviewing Wisconsin law governing the statute of limitations, I conclude that defendant's breach of contract claim was not timely filed.

Wisconsin law is clear that a breach of contract claim accrues for statute of limitations purposes on the date of the breach, not the date the breach is discovered. CLL Associates Ltd. Partnership v. Arrowhead Pacific Corp., 174 Wis. 2d 604, 609, 497 N.W.2d 115, 117 (1993). As defendant admits, the breach at issue occurred on the January 24, 2014—the date plaintiff returned the agglomerated, but "infested," colostrum to defendant. Dft.'s Answer and Counterclaims ¶ 45, dkt. #11 ("As a direct result of Plaintiff's breach by supplying insect-infested product, Sterling has been injured and suffered damages in excess of $75,000."). If defendant's breach of contract claim accrued on the day the breach occurred (January 24, 2014), it is untimely regardless whether this action was "commenced" on the date plaintiff filed suit (February 13, 2015) or the date defendant filed its counterclaims (March 31, 2015), because neither of these events occurred within a year from the day of the breach.

In an effort to avoid dismissal, defendant advances two arguments for not applying Wisconsin law governing accrual of a claim for purposes of the state's limitations period and for holding that defendant's claim did not accrue until March 12, 2014 when it *discovered*

plaintiff's alleged breach. However, neither of these arguments is availing.

First, defendant argues that all of the cases in which the Wisconsin courts have held that a contract claim accrued at the time of the breach involved Wisconsin's *statutory* limitations period, not a one-year *contractual* limitations period. Dft.'s Resp. Br. at 9-10, dkt. #55. This argument fails because it hinges on a distinction that makes no apparent difference. Regardless whether the limitations period is statutory or contractual, the reasons for refusing to extend the discovery rule to breach of contract claims are equally applicable. CLL Associates, 174 Wis. 2d at 611-13 (discussing reasons for adopting liberal "discovery rule" in tort, but not contract, cases); see also St. Paul Fire & Marine Insurance Co. v. TGMD, Inc., 2013 A.M.C. 519, 526, No. 12-c-0885, 2012 WL 6204176, at **4-5 (E.D. Wis. Dec. 12, 2012) (discussing policy for not applying discovery rule in contract context and holding that claim accrued on date breach occurred for purpose of a one-year contractual limitations period). Of particular salience here is the fact that contracting parties are in a better position to investigate whether their counterparts breached the terms of their agreement than tort claimants are to investigate whether a tortfeasor breached its duty of care. CLL Associates, 174 Wis. 2d at 612 ("[A] contract claimant has a significant amount of control over its risks of loss. . . . [Plaintiffs] had the choice of whether to use an architect for field inspections and how many field inspections to require."). Defendant does not contend that it was somehow prevented from opening and inspecting the agglomerated colostrum until March 12, 2014, approximately six weeks after it was delivered to defendant.

Second, defendant argues that the parties did not have a "meeting of the minds" with

respect to the meaning of the word "accrue." This argument relates to the construction of contractual language, which is a question of law for the court. Osborn v. Dennison, 2008 WI App 139 ¶ 10, 314 Wis. 2d 75, 758 N.W.2d 491. In construing a contract, the terms the parties use are to be given their plain and ordinary meaning. Watertown Tractor & Equip. Co., Inc. v. Ford Motor Credit Co., 94 Wis. 2d 622, 637, 289 N.W.2d 288 (1980). "If the parties' intent can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence." Id. (citation omitted). After reviewing the contract and the parties' arguments, I conclude that there is no evidence to support defendant's interpretation of the contract.

As an initial matter, the contract provides that it "shall be construed and interpreted according to the laws of the State of Wisconsin without reference to principles of conflict of laws." Order Confirmation, dkt. #31. This lends strong support for plaintiff's proffered interpretation because, as I have explained, breach of contract claims accrue under the laws of the state of Wisconsin at the moment of breach. Additionally, the contract provides that parties are required to give notice of any claims within five days after they receive the product. Such a term is inconsistent with defendant's proffered interpretation of when a claim accrues. If claims were to "accrue" when a breach is discovered, plaintiff would not have demanded notice of the claim within five days after the products are received. Finally, defendant fails to offer any record evidence to support its interpretation that claims accrue under the contract at the time they are discovered; instead, defendant merely makes the bald assertion that there was no "meeting of the minds" that the discovery rule would not apply.

This is insufficient to create a genuine issue of material fact. United States v. 5443 Suffield Terrace, 607 F.3d 504, 510 (7th Cir. 2010) ("[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact[.]").

B. Defendant's Waiver and Estoppel Arguments are Unavailing

In addition to arguing that the discovery rule applies to the accrual date of its counterclaim, defendant argues that plaintiff waived its limitations defense by failing to raise it in its responsive pleading and should be estopped from raising this defense because it lulled plaintiff into inaction. Neither of these arguments has any merit.

First, a delay in raising an affirmative defense results in waiver only if the other party is prejudiced as a result. Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 632 (7th Cir. 2010). Defendant does not explain how it was prejudiced by the fact that plaintiff failed to raise its contractual limitations defense on April 21, 2015 when plaintiff filed its reply to defendant's counterclaim. Williams v. Lampe, 399 F.3d 867, 871 (7th Cir. 2005) ("[W]here the plaintiff has an opportunity to respond to a late affirmative defense, he cannot establish prejudice merely by showing that the case has progressed significantly since the defendants answered the complaint.").

Defendant's contention that I should reject plaintiff's assertion of the limitations defense because "Agropur and Sterling were in discussions trying to address the counterclaim issues prior to filing suit," Dft.'s Resp. Br. at 14, dkt. #55, is similarly unavailing. This type

of argument has been consistently rejected by the Court of Appeals for the Seventh Circuit. Lulling a party into inaction by engaging in pre-suit settlement negotiations is not an adequate basis for estopping a party from asserting a statute of limitations defense. Merrill Iron & Steel, Inc. v. Bechtold, No. 06-C-110-S, 2006 WL 1515619, at *7 (W.D. Wis. May 25, 2006) ("[I]t is widely held that mere negotiations concerning a disputed claim without more is insufficient to warrant application of equitable estoppel.") (citing Cange v. Stotler & Co., Inc., 826 F.2d 581, 587 (7th Cir. 1987)). Instead, the party against whom the defense is raised must show that the party raising the defense took "active steps to prevent [the party] from suing." Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission, 377 F.3d 682, 689 (7th Cir. 2004); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir. 1990). Defendant has failed to adduce any evidence that plaintiff took active steps to delay or prevent defendant from suing. Accordingly, defendant's attempt to avoid plaintiff's limitations defense on this ground is rejected.


ORDER

IT IS ORDERED that

    1. The motion for partial summary judgment filed by plaintiff Agropur MSI, LLC, dkt. #26, is GRANTED with respect to (a) liability on the claims plaintiff has asserted against defendant Sterling Technology, Inc. and (b) the claims that defendant has asserted in its counterclaims against plaintiff, dkt. #11. Plaintiff's claims will proceed to trial on the question of damages only. Defendant's counterclaims are DISMISSED WITH PREJUDICE.

2. Plaintiff's motion for sanctions for spoliation, dkt. #39, is DENIED as moot. If plaintiff believes that it is entitled to an award of costs and attorney fees as a sanction for defendant's alleged spoliation, plaintiff may raise this issue after trial.

Entered this 15th day of March, 2016.

                                        BY THE COURT:
                                        /s/
                                        BARBARA B. CRABB
                                        District Judge